MEMORANDUM AND OPINION ORDER
 

 HEARTFIELD, District Judge.
 

 Before this Court is
 
 Defendant Mazda Motor of America, Inc. d/b/a Mazda North, American Operations’ Opposed Motion to Transfer for Improper Venue Or, In the Alternative, Opposed Motion to Transfer
 
 
 *759
 

 Venue Due to Inconvenient Forum
 
 [4], Having considered the motion, the response, the reply to the response, the sur-reply to the reply, the “response” to the sur-reply, and the arguments of counsel, this Court DENIES SUBJECT TO RE-URGING AFTER FURTHER DISCOVERY Defendant Mazda’s
 
 Opposed Motion to Transfer for Improper Venue or, In the Alternative, Opposed Motion to Transfer Venue Due to Inconvenient Forum
 
 [4] as to the motion to transfer for improper venue; and it DENIES Defendant Mazda’s
 
 Opposed Motion to Transfer for Improper Venue or, In the Alternative, Opposed Motion to Transfer Venue Due to Inconvenient Forum
 
 [4] as to the motion to transfer under Title 28 U.S.C. § 1404(a).
 

 1. Facts and Procedural History
 

 On October 22, 1998 Dr. Khadijah Mohamed was driving down Greenville Avenue in Dallas, Texas. Dr. Khadijah Mohamed, driving a Mazda Protege sedan, pulled into Greenville’s intersection with Park Lane. While trying to turn left onto eastbound Park Lane, Dr. Khadijah Mohamed collided with a pick-up truck driven by Gregory J. Graham. Dr. Khadijah Mohamed did not survive the collision.
 

 On November 19, 1999 Dr. Khadijah Mohamed’s surviving husband, Dr. Abdul Mohamed, individually, as representative of her estate, and as next friend of their seven-year-old daughter, instituted this wrongful death and survival action asserting product liability claims against Defendants Mazda Motor Corporation and Mazda Motor of America, Inc., which manufactured and sold his wife’s sedan. Specifically, Dr. Abdul Mohamed alleges that his wife was restrained only by the passive shoulder belt which failed to prevent her death; moreover, Dr. Mohamed alleges the passive shoulder belt, in fact, inflicted injuries which proximately caused her death.
 

 On December 13,1999 Defendant Mazda Motor of America, Inc. d/b/a Mazda North American Operations’ filed its
 
 Opposed Motion to Transfer for Improper Venue or, In the Alternative, Opposed Motion to Transfer Venue Due to Inconvenient Forum (“Mazda’s Motion to Transfer”)
 
 [4]. After receiving a response, a reply to the response, a sur-reply to the reply, and a “response” to the sur-reply, this Court now feels confident it can rule on
 
 Mazda’s Motion to Transfer
 
 [4]. It’s DENIED.
 

 2. Rule 12(b) Motion to Dismiss or Transfer for Improper Venue
 

 A. Timing for Improper Venue Motion Compared to Transfer for Convenience Motion
 

 Rule 12(h) of the Federal Rules of Civil Procedure reads in relevant part:
 

 (1) A defense of lack of jurisdiction over the person,
 
 improper venue,
 
 insufficiency of process, or insufficiency of service of process is waived (A) if omitted from a motion in the circumstances described in subdivision (g), or (B) if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course.
 

 Fed.R.Civ.P. 12(h)(1). First, this Court notes that this rule speaks to
 
 improper venue
 
 — not
 
 transfer of venue
 
 for convenience of the parties and the witnesses under Title 28 U.S.C. § 1404(a).
 
 [1]
 
 Professors Wright, Miller, and Cooper: “Section 1404(a) sets no limit on the time at which a motion to transfer may be made.
 
 Such a motion is not an objection to improper venue, which, under Rule 12(b), would be required to be made before the answer.”
 
 Charles A. Wright, Arthur R. Miller,
 
 &
 
 Edward H. Cooper, Federal Practice and Procedure (“Wright, Miller, & Cooper”) § 3844, at 334-335 (2d ed.1986) (emphasis added) (citing
 
 American Standard v. Bendix Corp.,
 
 487 F.Supp. 254, 261 (D.C.Mo.1980);
 
 Nowotny v. Turner,
 
 203
 
 *760
 
 F.Supp. 802 (D.C.N.C.1962); and
 
 Spence v. Norfolk & W. Ry. Co.,
 
 89 F.Supp. 823 (D.C.Ohio 1950)). In fact, a Section 1404(a) transfer motion can technically be made at
 
 any
 
 time. In
 
 American Standard
 
 the district court held that a delay of
 
 four years
 
 in bringing a transfer motion did not, in itself, bar the motion. 487 F.Supp. at 261. The district court found the motion “timely” since the four-year delay had not been shown to be “a dilatory tactic, or that the defendant would be prejudiced solely because of the delay.”
 
 Id.
 

 Of course, crafty litigants can’t ambush their opponents with a tactical Section 1404(a) transfer motion on the eve of trial. “A motion to transfer should be made with ‘reasonable promptness.’ ”
 
 Henderson v. AT & T Corp.,
 
 918 F.Supp. 1059, 1065 & n. 6 (S.D.Tex.1996) (citing
 
 Peteet v. Dow Chemical Co.,
 
 868 F.2d 1428, 1436 (5th Cir.),
 
 cert. denied,
 
 493 U.S. 935, 110 S.Ct. 328, 107 L.Ed.2d 318 (1989)). Reasonable promptness? What’s that? If a litigant resisting transfer successfully shows the Section 1404(a) transfer motion is a dilatory tactic, or that it would be prejudiced solely because of the delay in bringing the motion, then the litigant moving for transfer has failed to show “reasonable promptness” in bringing his transfer motion.
 
 See American Standard,
 
 487 F.Supp. at 261;
 
 Peteet,
 
 868 F.2d at 1436. Nevertheless, unlike a motion to dismiss for improper venue, there is absolutely no reason why a litigant seeking a Section 1404(a) transfer
 
 must
 
 so move before the original answer.
 

 B. Improper Venue
 

 Defendant Mazda argues the Plaintiffs have improperly filed suit in the Eastern District of Texas. Title 28 U.S.C. § 1391(c) provides that a case may be brought in “a judicial district where any defendant resides, if all defendants reside in the same state.”
 
 [2]
 
 28 U.S.C. § 1391(c). Defendant Mazda first argues that venue is improper because “a manufacturer or national distributor may
 
 only
 
 be subject to personal jurisdiction
 
 where the product caused injury.” MNAO’s Reply to Plaintiffs’ Response to Defendant’s Motion to Transfer Venue
 
 [20] at p. 2 (emphasis added). To bolster this unique proposition, Defendant Mazda cites the following passage from the
 
 Rutter Group Practice Guide: Federal Civil Procedure Before Trial:
 

 Manufacturer or national distributor.
 

 A manufacturer or national distributor (as distinguished from a retailer or local distributor) may be subject to personal jurisdiction
 
 wherever
 
 the product causes injury. It is enough that the manufacturer of distributor
 
 “purposefully” attempts to serve
 
 a market in the forum state. Local courts may properly “assert personal jurisdiction over a corporation that
 
 delivers its products into the stream of commerce
 
 with the expectation that they will be purchased by consumers in the forum state.”
 

 Rutter Group Practice Guide: Federal Civil Procedure Before Trial (“Practice Guide”),
 
 § 3.175 (5th Cir. ed.1999) (emphasis in original). Did you notice something different between Defendant Mazda’s proposition and the passage used to support it? The word “only.” Defendant Mazda artificially injects “only” into the passage to support its proposition that all across the country aggrieved plaintiffs
 
 must
 
 sue manufacturers where the product causes the injury, regardless whether the manufacturer is subject to personal jurisdiction in other forums. Defendant Mazda’s entire argument rests upon the erroneous belief that manufacturers may only be subject to “specific” personal jurisdiction where the product causes injury, thereby nullifying “general” personal jurisdiction in product liability cases.
 

 
 *761
 
 Well the very authority Defendant Mazda uses to argue it can force plaintiffs to sue only where the injury occurs belies such a puzzling interpretation of the law:
 

 Effect: Where general jurisdiction exists, the defendant can be sued on
 
 any claim arising anywhere.
 
 Such jurisdiction will be found where defendant is engaged in substantial interstate business (e.g., a
 
 major car manufacturer,
 
 airline, etc.).
 

 Practice Guide,
 
 II 3:104 (italics in original; underline added). The Hittner treatise uses entities such as major car manufacturers as the veritable poster children for general personal jurisdiction — precisely the Plaintiffs’ basis for jurisdiction in this case — since they have sued both the vehicle manufacturer (who has not yet appeared) and the national distributor. Suffice it to say major car manufacturers or national distributors, like Defendant Mazda,
 
 may
 
 be subject to general personal jurisdiction in this Court in product liability cases.
 

 C. Personal Jurisdiction
 

 “Under the Federal Rules of Civil Procedure, a federal court in a diversity case may exercise jurisdiction over a nonresident corporate defendant only if permitted by state law.”
 
 Alpine View Co. Ltd. v. Atlas Copco AB,
 
 205 F.3d 208, 214 (5th Cir.2000) (citing Fed.R.Civ.P. 4(e)(1), 4(h)(1), and 4(k)(l)). The Texas long-arm statute:
 

 In addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident:
 

 (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;
 

 (2) commits a tort in whole or in part in this state; or
 

 (3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.
 

 Tex.Civ.Peac.
 
 &
 
 Rem.Code.Ann. § 17.042 (Vernon 1997). “Under the Texas long-arm statute, a court has personal jurisdiction over a foreign defendant to the fullest extent allowed by the federal constitution.”
 
 Alpine View,
 
 205 F.3d at 213;
 
 see also Wilson v. Belin,
 
 20 F.3d 644, 647 & n. 1 (5th Cir.1994),
 
 cert. denied,
 
 513 U.S. 930, 115 S.Ct. 322, 130 L.Ed.2d 282 (1994).
 

 “A federal district court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum state confers personal jurisdiction over the defendant; and (2) the exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution.”
 
 Latshaw v. Johnston,
 
 167 F.3d 208, 210 (5th Cir.1999) (citing
 
 Ham v. La Cienega Music Co.,
 
 4 F.3d 413, 415 (5th Cir.1993);
 
 Irving v. Owens-Coming Fiberglas Corp.,
 
 864 F.2d 383, 385 (5th Cir. 1989)). However, “[a]s the Texas long-arm statute extends to the limits of federal due process, these two steps conflate.”
 
 Id.
 
 (internal citation omitted) (citing
 
 Schlobohm v. Schapiro,
 
 784 S.W.2d 355, 357 (Tex.1990));
 
 Ham,
 
 4 F.3d at 415
 
 &
 
 n. 7. Thus, the afore-mentioned two-step analysis reduces to one step, or “conflates”; and the court considers whether exercising jurisdiction over the nonresident defendant is consistent with due process.
 
 See Mink v. AAAA Dev. LLC.,
 
 190 F.3d 333, 335 (5th Cir.1999);
 
 Alpine View,
 
 205 F.3d at 214.
 

 A federal district court’s exercise of personal jurisdiction over a nonresident defendant comports with the Due Process Clause of the Fourteenth Amendment
 
 [3]
 
 when two requirements are met. First, the nonresident defendant must have “purposefully availed himself of the benefits and protections of the forum state by es
 
 *762
 
 tablishing ‘minimum contacts’ with the forum state.”
 
 Wilson v. Belin,
 
 20 F.3d 644, 647 (5th Cir.1994),
 
 cert. denied,
 
 513 U.S. 930, 115 S.Ct. 322, 130 L.Ed.2d 282 (1994) (citing
 
 International Shoe Co. v. Washington,
 
 326 U.S. 310, 315-17, 66 S.Ct. 154, 90 L.Ed. 95 (1945)) and
 
 Bullion v. Gillespie,
 
 895 F.2d 213, 215 (5th Cir.1990));
 
 Latshaw,
 
 167 F.3d at 211 (citing
 
 World-Wide Volkswagen Corp. v. Woodson,
 
 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)) (“To comport with due process, the defendant’s conduct in connection with the forum state must be such that he should reasonably anticipate being haled into court in the forum state.”). “And second, the exercise of jurisdiction over the nonresident defendant must not offend ‘traditional notions of fair play and substantial justice.’”
 
 Wilson,
 
 20 F.3d at 647,
 
 cert. denied,
 
 513 U.S. 930, 115 S.Ct. 322, 130 L.Ed.2d 282 (1994) (quoting
 
 Asahi Metal Industry Co. v. Superior Court of California, Solano County,
 
 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987));
 
 Latshaw,
 
 167 F.3d at 211.
 

 So the first prong requires a showing of minimum contacts. What are those?
 

 The “minimum contacts” prong of the inquiry may be further subdivided into contacts that give rise to “specific” personal jurisdiction and those that give rise to “general” personal jurisdiction. Specific jurisdiction is appropriate when the nonresident defendant’s contacts with the forum state arise from, or are directly related to, the cause of action. General jurisdiction, however, will attach even if the nonresident defendant’s contacts with the forum state are not directly related to the cause of action, if the defendant’s contacts with the forum state are both “continuous and systematic.”
 

 Wilson,
 
 20 F.3d at 647,
 
 cert. denied,
 
 513 U.S. 930, 115 S.Ct. 322, 130 L.Ed.2d 282 (1994) (citing
 
 Helicopteros Nacionales de Colombia, S.A. v. Hall,
 
 466 U.S. 408, 413-16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)).
 

 Finally, if the nonresident defendant’s related or unrelated minimum contacts with the forum state are sufficient, the court “must then consider whether the ‘fairness’ prong of the jurisdictional inquiry is satisfied.’ ”
 
 Wilson,
 
 20 F.3d at 647,
 
 cert. denied,
 
 513 U.S. 930, 115 S.Ct. 322, 130 L.Ed.2d 282 (1994) (citing
 
 Asahi,
 
 480 U.S. at 113, 107 S.Ct. 1026). The “fairness” prong’s malleable factors include the following: “[ (1) ] [T]he burden upon the nonresident defendant; (2) the interests of the forum state; (3) the plaintiffs interest in securing relief; (4) ‘the interstate judicial system’s interest in obtaining the most efficient resolution of controversies;’ and (3) ‘the shared interest of the several States in furthering fundamental substantive social policies.’ ”
 
 Wilson,
 
 20 F.3d at 647
 
 &
 
 n. 3 (citing
 
 Bullion v. Gillespie,
 
 895 F.2d 213, 215 (5th Cir.1990) (citing
 
 Asahi,
 
 480 U.S. at 113, 107 S.Ct. 1026 (quoting
 
 World-Wide Volkswagen Corp. v. Woodson,
 
 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)))).
 

 “When a nonresident presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court’s jurisdiction over the nonresident. The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery.”
 
 Stuart v. Spademan,
 
 772 F.2d 1185, 1192 (5th Cir. 1985) (citing
 
 Thompson v. Chrysler Motors Corp.,
 
 755 F.2d 1162, 1166 (5th Cir.1985);
 
 D.J. Investments v. Metzeler Motorcycle Tire Agent Gregg,
 
 754 F.2d 542, 545 (5th Cir.1985);
 
 Washington v. Norton Manufacturing Inc.,
 
 588 F.2d 441, 443 (5th Cir.),
 
 cert. denied,
 
 442 U.S. 942, 99 S.Ct. 2886, 61 L.Ed.2d 313 (1979)). “[I]t is well established that where the district court rules on a motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, the plaintiff may bear his burden by presenting a prima facie case of jurisdiction.”
 
 Felch v. Transportes Lar-Mex SA De CV,
 
 92 F.3d 320, 326 (5th Cir.1996);
 
 Alpine View,
 
 205 F.3d at 214;
 
 *763
 

 Bullion,
 
 895 F.2d at 217;
 
 Latshaw,
 
 167 F.3d at 208. “When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, it must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts posed by the affidavits.”
 
 Latshaw,
 
 167 F.3d at 211 (citing
 
 Ham v. La Cienega Music Co., 4 F.3d 413, 415 (5th
 
 Cir.1993));
 
 Command-Aire v. Ontario Mechanical Sales & Service,
 
 963 F.2d 90, 93 (5th Cir.1992);
 
 Bullion,
 
 895 F.2d at 217 (“[0]n a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiffs complaint must be taken as true, and conflicts between the facts contained in the parties’ affidavits must be resolved in the plaintiffs favor for purposes of determining whether a
 
 prima facie
 
 case for personal jurisdiction exists.”) (quoting
 
 D.J. Investments, Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.,
 
 754 F.2d 542, 546 (5th Cir.1985)). “Eventually, of course, the plaintiff must establish jurisdiction by a preponderance of the evidence, either at a pretrial evidentiary hearing or at a trial.”
 
 Travelers Indem. Co. v. Calvert Fire Ins. Co.,
 
 798 F.2d 826, 831 (5th Cir.1986),
 
 modified on rehearing in unrelated part,
 
 836 F.2d 850 (5th Cir. 1988) (citation and footnote omitted);
 
 see also DeMelo v. Toche Marine,
 
 711 F.2d 1260, 1270-71 & n. 12 (5th Cir.1983);
 
 Rano v. Sipa Press,
 
 987 F.2d 580, 587 n. 3 (9th Cir.1993) (“If the trial court holds an evidentiary hearing or the case proceeds to trial, the burden on the plaintiff shifts to the preponderance of the evidence.”).
 

 Here, “Plaintiffs base their venue analysis on the existence of ‘general’ personal jurisdiction in the Eastern District” of Texas.
 
 Plaintiffs’ Original Petition
 
 [1] at p. 4. First, the Plaintiffs note Defendant Mazda markets its products through a national distributor to numerous dealerships in the Eastern District of Texas. Defendant Mazda counters that the dealers are all independent businesses and that the contracts between it and its dealers specifically claim that the authorized dealers are not “agents” for Mazda. Plaintiffs allege Defendant Mazda declined to provide documents regarding its sales or advertising amounts in its initial disclosures, claiming that such information is more properly requested via interrogatories. It should be self-evident that such information “bears significantly” on the claims and defenses in this case — specifically, Defendant Mazda’s defense of improper venue — the very issue currently before this Court. There is no excuse for Defendant Mazda to withhold this information.
 
 See supra,
 
 at p. 10. Since Defendant Mazda has apparently refused to participate in this Court’s mandatory disclosure obligations by erroneously refusing to make its initial disclosures regarding its improper venue defense under Local Rule CV-26, this Court is hesitant to rule on its motion to dismiss, lest the Plaintiffs be denied a reasonable opportunity for discovery.
 
 [4]
 
 So, this Court DENIES Defendant Mazda’s
 
 Opposed Motion to Transfer for Improper Venue or, In the Alternative, Opposed Motion to Transfer Venue Due to Inconvenient Forum
 
 [4] as to the motion to transfer for improper venue; however, this denial is SUBJECT TO RE-URGING at a later date
 
 after
 
 Defendant Mazda has participated in this Court’s mandatory disclosure obligations under Local Rule CV-26 regarding its improper venue defense. Incidentally, information revealing Defendant Mazda’s contacts with this District obviously “bears significantly on any claim or
 
 defense.”
 
 Indeed, it is axiomatic that information revealing a defendant’s contacts with this district is information that “bears significantly on ... [a] defense” when the defendant has, in fact, filed a motion to dismiss for improper venue.
 
 [5]
 

 
 *764
 
 3. Title 28 U.S.C. Section 1404(a) Transfer For Convenience and Justice — The Federal Judicial Housekeeping Measure
 

 A. A Brief History of Title 28 U.S.C. Section 1101(a)
 

 In 1948 Congress enacted Title 28 U.S.C. Section 1404(a) as part of the Judicial Code of 1948. Wright, Miller, & Cooper, § 3841, at 319 (2d ed.1986). Here’s what Title 28 U.S.C. § 1404 says in its entirety:
 

 (a)
 
 For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.
 

 (b) Upon motion, consent or stipulation of all parties, any action, suit or proceeding of a civil nature or any motion or hearing thereof, may be transferred, in the discretion of the court, from the division in which pending to any other division in the same district. Transfer of proceedings in rem brought by or on behalf of the United States may be transferred under this section without the consent of the United States where all other parties request transfer.
 

 (c) A district court may order any civil action to be tried at any place within the division in which it is pending.
 

 (d) As used in this section, “district court” includes the District of Guam, the District Court for the Norther Mariana Islands, and the District Court of the Virgin Islands, and the term “district” includes the territorial jurisdiction of the court.
 

 Title 28 U.S.C. § 1404(a) (emphasis added).
 

 The Reviser’s Note explaining the new subsection (a) “was not particularly illuminating.” Wright, Miller, & Cooper, § 3841, at 320 (2d ed.1986). Here’s what the Reviser’s Note said about subsection (a):
 

 Subsection (a) was drafted in accordance with the doctrine of forum non conve-niens, permitting transfer to a more convenient forum, even though the venue is proper. As an example of the need of such a provision, see
 
 Baltimore & Ohio R. Co. v. Kepner,
 
 1941, 314 U.S. 44, 62 S.Ct. 6, 86 L.Ed. 28, which was prosecuted under the Federal Employers’ Liability Act in New York, although the accident occurred and the employee resided in Ohio. The new subsection requires the court to determine that the transfer is necessary for convenience of the parties and witnesses, and further, that it is in the interest of justice to do so.
 

 “Congress cited a FELA case as an example of the need for such a provision, and courts have consistently held that § 1404(a) applies to all actions, not just those listed in the general venue provisions.”
 
 Robertson v. Kiamichi Railroad,
 
 42 F.Supp.2d 651, 654 (E.D.Tex.1999) (citing
 
 Ex Parte Collett,
 
 337 U.S. 55, 69 S.Ct. 944, 93 L.Ed. 1207 (1949) (the statutory language “any civil action” found in Section 1404(a) has broad applicability)). As the Fifth Circuit noted, Section 1404(a) is “a statute which codifies (with some amendment) the common law doctrine of forum non conveniens.”
 
 Castanho v. Jackson Marine, Inc.,
 
 650 F.2d 546, 550 (5th Cir.1981). But what’s the doctrine of forum non conveniens?
 

 B. Transfer for Convenience Under Title 28 U.S.C. § 1101(a) Compared to Dismissal Under the Doctrine of Forum Non Conveniens
 

 Transfer
 
 for convenience under Title 28 U.S.C. § 1404(a) should not be confused with
 
 dismissal
 
 under the doctrine of forum
 
 *765
 
 non conveniens.
 
 [6]
 
 The Restatement (Second) of Conflict of Laws § 84 defines forum non conveniens as the doctrine whereby “[a] state will not exercise jurisdiction if it is a seriously inconvenient forum for the trial of the action [,] provided that a more appropriate forum is available to the plaintiff.” Restatement (Second) of Conflict of Laws § 84 (1971). Professor, and later Judge, Robert Braucher traced the origins of forum non conveniens to Nineteenth-Century Scotland. Robert Baucher,
 
 The Inconvenient Federal Forum,
 
 60 Hahv. L.Rev. 908, 909 (1947). However, “[a]t the time of the American Revolution the common law of, England solved the question of the appropriate place for trial of an action by deciding whether it was local or transitory. Local actions are those based on facts which could have happened only in one place whereas actions based on facts which might have happened anywhere were transitory.”
 
 Johnson v. G.D. Searle & Co.,
 
 314 Md. 521, 525, 552 A.2d 29, 30-31 (1989); see also
 
 Box v. Ameritrust,
 
 810 F.Supp. 776 (tracing the distinction between local and transitory actions to
 
 Livingston, v. Jefferson,
 
 Fed.Cas. No. 8,411,15 F.Cas. 660 (C.C.D.Va.1811)). “Local actions can be tried only where they arise; transitory actions, in whatever court has jurisdiction over the defendant or his property.” Foster,
 
 Place of Trial of Civil Actions,
 
 43 Harv.L.Rev. 1217, 1217 (1930). Finally, another commentator argued American courts had been applying the doctrine of forum non conveniens without using its Latin label. Paxton Blair,
 
 The Doctrine of Forum Non Conveniens in Anglo-American Law,
 
 29 ColumL.Rev. 1, 2 (1929). Regardless whether the doctrine of forum non conveniens grew up in a Scottish kilt, an English petticoat, or an American pair of Wranglers, it’s safe to say the doctrine has been around a lot longer than Title 28 U.S.C. § 1404(a).
 

 Although “the doctrine did not originate in federal but in state courts,” in
 
 Gulf Oil Corporation v. Gilbert
 
 the United States Supreme Court held that United States District Courts have inherent power to dismiss cases under the doctrine of forum non conveniens. 330 U.S. 501, 505 & n. 4, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). The
 
 Gulf Oil
 
 court explained: “The principle of forum non conveniens is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute.”
 
 Id.
 
 at 507, 67 S.Ct. 839. Whether to resist imposition upon its jurisdiction was to be determined by the district court through weighing private and public interest factors.
 
 Id.
 
 at 508, 67 S.Ct. 839. However, the
 
 Gulf Oil
 
 Court said “[wjisely it has not been attempted to catalogue the circumstances which will justify or require either the grant or denial of remedy. The doctrine leaves much to the discretion of the court to which plaintiff resorts, and experience has not shown a judicial tendency to renounce one’s own jurisdiction so strong as to result in many abuses.”
 
 Id.
 
 (citing Dainow,
 
 The Inappropriate Forum,
 
 29 Ill.L.Rev. 867, 889).
 

 The
 
 Gulf Oil
 
 Court laid out the private interest factors:
 

 Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforceability of a judgment if one is obtained. It is often said that the plaintiff may not, by choice of an inconvenient forum, “vex,” “harass,” or “oppress” the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy.
 
 But unless the balance is strongly in favor of the defendant, the plaintiffs choice of forum should rarely be disturbed.
 

 
 *766
 

 Gulf Oil,
 
 330 U.S. at 508, 67 S.Ct. 839 (citing Blair,
 
 The Doctrine of Forum Non Conveniens in Anglo-American Law,
 
 29 Col.L.Rev. 1) (emphasis added).
 

 Then, the
 
 Gulf Oil
 
 Court laid out the public interest factors:
 

 Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it be report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in foreign law itself.
 

 Gulf Oil,
 
 330 U.S. at 508-09, 67 S.Ct. 839. Finally, the
 
 Gulf Oil
 
 Court said that, on appellate review of the dismissal of a complaint on forum non conveniens grounds, the test is whether the trial court “exceed[ed] its powers or the bounds of its diseretion[.]”
 
 Id.
 
 at 512, 67 S.Ct. 839.
 

 In rendering the
 
 Gulf Oil
 
 decision on the doctrine of forum non conveniens, the United States Supreme Court noted that “the federal law contains no such express criteria to guide the district court in exercising its power.”
 
 Id.
 
 at 507, 67 S.Ct. 839. Merely one year later, in 1948, Congress enacted Title 28 U.S.C. § 1404(a) providing that “[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.” Title 28 U.S.C. § 1404(a). The United States Supreme Court on the constitutionality of Section 1404(a):
 

 The constitutional authority of Congress to enact § 1404(a) is not subject to serious question. As the Court made plain in
 
 Hanna,
 
 “the constitutional provision for a federal court system ... carries with it congressional power to make rules 'governing the practice and pleading in those courts, which in turn includes a power to regulate matters which, though falling within the uncertain area between substance and procedure, are rationally capable of classification of either.”
 
 Hanna v. Plumer,
 
 380 U.S. 460, 472, 85 S.Ct. 1136, 1144, 14 L.Ed.2d 8 (1965).
 
 See also id.
 
 at 473, 85 S.Ct. at 1145 (“Erie and its offspring cast no doubt on the long-recognized power of Congress to prescribe housekeeping rules for federal courts.”). Section 1404(a) is doubtless capable of classification as a procedural rule, and indeed, we have so classified it in holding that a transfer pursuant to § 1404(a) does not carry with it a change in the applicable law.
 
 See Van Dusen v. Barrack,
 
 376 U.S. at 636-637, 84 S.Ct. at 819-820
 
 (“[Bjoth the history and purposes of § 1404(a) indicate that it should be regarded as a federal judicial housekeeping measure.”).
 
 It therefore falls comfortably within Congress’ powers under Article III as augmented by the Necessary and Proper Clause.
 
 See Burlington Northern R. Co. v. Woods,
 
 480 U.S. 1, 5, n. 3, 107 S.Ct. 967, 969, n. 3, 94 L.Ed.2d 1 (1987).
 

 Stewart Organization, Inc. v. Ricoh Corporation,
 
 487 U.S. 22, 32, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (emphasis added) (holding that Section 1404(a) governs a federal court’s decision whether to give effect to the parties’ forum-selection clause and transfer the case). So Section 1404(a) — the federal judicial housekeeping measure — is constitutional. But what happened to the doctrine of forum non conve-niens after its enactment?
 

 “Following the enactment in 1948 of Section 1404(a), the change-of-venue statute, ‘the doctrine of forum non conveniens, as set out in
 
 [Gulf Oil Corporation
 
 
 *767
 

 v.] Gilbert,
 
 remains good law so long as the possible alternative forum is a state or foreign court.’ ”
 
 Hartford Fire Ins. Co. v. Westinghouse Electric Corp.,
 
 725 F.Supp. 317, 321 (S.D.Miss.1989) (citing
 
 Cowan v. Ford Motor Co.,
 
 713 F.2d 100, 103 (5th Cir.1983));
 
 see also Johnson,
 
 314 Md. at 527, 552 A.2d at 32. The Filth Circuit on the continuing applicability of the doctrine of forum non conveniens in light of Congress’ 1948 enactment of section 1404(a):
 

 Section 1404(a) superseded the common law doctrine of forum non conveniens insofar as transfer to another federal district court is possible. As the Supreme Court pointed out in
 
 Norwood v. Kirkpatrick,
 
 “the harshest result of the application of the old doctrine of forum non conveniens, dismissal of the action, was eliminated by the provision in § 1404(a) for transfer.”
 

 Cowan,
 
 713 F.2d at 103 (quoting
 
 Norwood v. Kirkpatrick,
 
 349 U.S. 29, 32, 75 S.Ct. 544, 99 L.Ed. 789 (1955)). Thus, dismissal of a case under the doctrine of forum non conveniens
 
 [7]
 
 is improper provided there is an alternative, federal forum in which the case could have been brought.
 

 C. Title 28 U.S.C. § 1404(a) Standard and Appellate Review
 

 So, in 1948 Congress enacted Title 28 U.S.C. § 1404(a) which reads: “ffjor the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.” Title 28 U.S.C. § 1404(a).
 

 Plaintiff Mohamed filed his complaint in this United States District Court for the Eastern District of Texas, Marshall Division. Defendant Mazda wants to transfer this case to the United States District Court for the Northern District of Texas, Dallas Division.
 
 [8]
 
 Title 28 U.S.C. § 1391(a) provides:
 

 A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial
 
 district
 
 where any defendant resides, if all defendants reside in the same State, (2) a judicial
 
 district
 
 in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial
 
 district
 
 in which the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.
 

 28 U.S.C. § 1391(a) (emphasis added). First, there is no divisional requirement
 
 *768
 
 under Title 28 U.S.C. Section 1391(a).
 
 [9]
 
 However, before its repeal in 1988, there was a divisional requirement contained within Title 28 U.S.C. § 1393.
 
 Jordon v. Bowman Apple Products Co.,
 
 728 F.Supp. 409, 418-19 (W.D.Va.1990). “Section 1393, which was addressed to only those districts that are broken into divisions and which required (among other things) that suit against a defendant be brought in the division of the defendant’s residence, has been a troublesome and ineffective statute and was repealed in 1988 as part of the Judicial Improvements and Access to Justice Act (Pub.L.100-701).” David D. Siegal.
 
 Commentary on 1988 Repeal of § 1393,
 
 28 U.S.C.A. § 1393, 70 (1993).
 

 Nevertheless, a litigant can move for either
 
 inter
 
 or
 
 intra
 
 district transfer under Section 1404(a); regardless whether the litigant moves for
 
 inter
 
 or
 
 intra
 
 district transfer, the analysis remains the same. Although defendants typically seek transfer under this particular statute, plaintiffs can move for transfer under this statute, too — so sayeth the United States Supreme Court.
 
 See Ferens v. John Deere Company,
 
 494 U.S. 516, 530, 110 S.Ct. 1274, 108 L.Ed.2d 443 (1990) (refusing to afford “transfers initiated by plaintiffs different treatment from transfers initiated by defendants” to avoid “undesirable complications” and holding “the transferor law should apply regardless of who makes the § 1404(a) motion”).
 
 [10]
 
 Regardless whether the plaintiff or the defendant moves for transfer under Section 1404(a), the moving litigant seeking transfer bears the burden of demonstrating that a transfer of venue is warranted.
 
 Time, Inc. v. Manning,
 
 366 F.2d 690 (5th Cir.1966);
 
 Gundle Lining Construction Corp. v. Fireman’s Fund Ins. Co.,
 
 844 F.Supp. 1163, 1165 (S.D.Tex.1994). To prevail, the litigant must demonstrate that the balance of convenience and justice
 
 substantially
 
 weighs in favor of transfer.
 
 Gundle,
 
 844 F.Supp. at 1165. “Moreover, there is a ‘strong presumption in favor of the plaintiffs choice of forum that may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum.’ ”
 
 Robertson,
 
 42 F.Supp.2d at 655 (quoting
 
 Schexnider v. McDermott Intern., Inc.,
 

 [11]
 

 817 F.2d 1159, 1164 (5th Cir.),
 
 cert. denied,
 
 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987)).
 

 Whether to transfer venue under Section 1404(a) is within the trial court’s sound discretion.
 
 Id.; Jarvis Christian College v. Exxon Corp.,
 
 845 F.2d 523, 528 (5th Cir.1988). The United States Supreme Court:
 

 Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an “individualized, case-by-case consideration of convenience and fairness.”
 
 Van Dusen v. Barrack,
 
 376 U.S. 612, 622, 84 S.Ct. 805, 812, 11 L.Ed.2d 945 (1964). A motion to transfer under § 1404(a) thus calls on the district court to weigh in the balance a number of case-specific factors.
 

 Stewart Organization, Inc. v. Ricoh Corp.,
 
 487 U.S. 22, 29, 108 S.Ct. 2239, 101
 
 *769
 
 L.Ed.2d 22 (1988);
 
 see also International Software Systems, Inc. v. Amplicon, Inc.,
 
 77 F.3d 112, 115 (5th Cir.1996) (a motion to transfer under Section 1404(a) calls for an “individualized, case-by-case consideration of convenience and fairness.”). The Court must consider “all relevant factors to determine whether or not on balance the litigation would more conveniently proceed and the interests of justice would be better served by transfer to a different forum.” Weight, Miller, and Cooper, § 3847 (2d ed.1986).
 

 Is the judge’s discretion in granting or denying a Section 1404(a) motion to transfer subject to interlocutory appeal under Title 28 U.S.C. § 1292(b)? Not in the Fifth Circuit.
 

 The Fifth Circuit:
 

 We are of the view that § 1292(b) review is inappropriate for challenges to a judge’s discretion in granting or denying transfers under § 1404(a). The Congressional policy against piecemeal appeals, as expressed in the final judgment rule, 28 U.S.C. § 1291, to which § 1292(b) is a narrow exception, is eroded by permitting review of exercise of the judge’s discretion under § 1404(a) as a “controlling question of law.” Our conclusion is the same as that already reached by the Second, Third, and Sixth Circuits, and by the text writers.
 

 Garner v. Wolfinbarger,
 
 433 F.2d 117, 120 (5th Cir.1970) (citing
 
 A. Olinick & Sons v. Dempster Bros., Inc.,
 
 365 F.2d 439, 443 (2d Cir.1966);
 
 Standard v. Stoll Packing Corp.,
 
 315 F.2d 626 (3d Cir.1963);
 
 Bufalino v. Kennedy,
 
 273 F.2d 71 (6th Cir.1959) and 1 Barron
 
 &
 
 Holzoff, Federal Practice & Procedure, § 86.7 at 434 (Wright ed.1960);
 
 see also
 
 Moore, Federal Practice, P0.147 at 1973-74 (1964)). Subsequent Fifth Circuit opinions affirm that litigants in the Fifth Circuit may
 
 not
 
 certify a court’s grant or denial of a motion to transfer for interlocutory appeal under Title 28 U.S.C. § 1292(b).
 
 See In re Matter of Macon Uplands Venture,
 
 624 F.2d 26 (1980) (“Orders of transfer and consolidation are interlocutory and not appeal-able.”);
 
 Louisiana Ice Cream Distributors, Inc. v. Carvel Corporation,
 
 821 F.2d 1031, 1033 (5th Cir.1987) (“[WJe have disclaimed immediate appellate jurisdiction over the grant or denial of a motion to transfer under 28 U.S.C. § 1404(a).”). So dissatisfied litigants seeking to disrupt a lower court’s ruling on a motion to transfer under Section 1404(a) can not certify the question for interlocutory appeal under Title 28 U.S.C. § 1292(b). '
 

 Well if there’s no interlocutory appeal of the judge’s discretion in granting or denying a Section 1404(a) motion to transfer, could there be a writ of mandamus? Technically, yes. The Fifth Circuit on the appropriate standard:
 

 It is our opinion that, in the absence of a failure of the District Court to correctly construe and apply [Title 28 U.S.C. § 1404(a)], or to consider the relevant factors incident to ruling upon a motion to transfer, or unless it is necessary to correct a clear abuse of discretion, a Court of Appeals should not entertain motions for Writs of Mandamus to direct District Courts to enter or vacate orders of transfer under § 1404(a).
 

 Ex Parte Charles Pfizer & Co.,
 
 225 F.2d 720, 723 (5th Cir.1955). The Fifth Circuit’s hesitation to issue writs of mandamus against district court’s fact-intensive rulings on motions to transfer under Section 1404(a) persists.
 
 See Atlantic Coast Line R.R. v. Davis,
 
 185 F.2d 766 (5th Cir.1950);
 
 Ex Parte Pharmar-Craft Corp.,
 
 236 F.2d 911, 912 (5th Cir.1956);
 
 In re First National Bank of Montgomery,
 
 233 F.2d 876 (5th Cir.1956);
 
 Ex Parte Blaski,
 
 245 F.2d 737, 738 (5th Cir.1957);
 
 Ex Parte Deepwater Exploration Co.,
 
 260 F.2d 546 (5th Cir.1958);
 
 Garner,
 
 433 F.2d at 120;
 
 Castanho,
 
 650 F.2d 546 (holding the standard for mandamus of a district court’s ruling on forum non conveniens is the same as the standard for mandamus of a district court’s Section 1404(a) rulings);
 
 In re Cragar Indus. Inc.,
 
 706 F.2d 503, 504
 
 *770
 
 (5th Cir.1983);
 
 Louisiana Ice Cream Distributors, Inc.,
 
 821 F.2d at 1034.
 

 Professors Wright, Miller, and Cooper: “[The Fifth Circuit] almost never has found an abuse of discretion sufficiently clear to justify mandamus.”
 
 [12]
 
 15 Wright, Miller, & Cooper, § 3855, at 488 (1986). Courts receiving cases transferred from the Fifth, Circuit have also noted its hesitation to issue writs of mandamus against district court’s fact-intensive rulings on motions to transfer under Section 1404(a).
 
 [13]
 

 SongByrd, Inc. v. Estate of Grossman,
 
 206 F.3d 172 (2nd Cir.2000) (“Review of transfer orders by writ of mandamus in the transferor circuit might be available, but the Fifth Circuit ... rarely grants such review.”) (footnote and citation omitted). As the Fifth Circuit noted, “[i]n the voluminous litigation over transfer orders, only a few litigants have surmounted the formidable obstacles and secured the writ.”
 
 Garner,
 
 433 F.2d at 120 (citing
 
 Chicago R.I. & P.R.R. v. Igoe,
 
 220 F.2d 299 (7th Cir.),
 
 cert. denied,
 
 350 U.S. 822, 76 S.Ct. 49,100 L.Ed. 735 (1955)) (mandamus ordering transfer);
 
 Atlantic Coast Line R.R. v. Davis,
 
 185 F.2d 766 (5th Cir.1950) (holding the district judge could not renounce jurisdiction after two mistrials and retransfer the case to the transferor court);
 
 Koehring Co. v. Hyde Construction Co.,
 
 324 F.2d 295 (5th Cir. 1963) (holding on
 
 appeal
 
 from denial to dismiss for lack of personal jurisdiction and motion to transfer the court need not address the jurisdictional question since the case should have been transferred under Section 1404(a)
 
 [14]
 
 ). To this Court’s knowledge, the Fifth Circuit has not issued a writ of mandamus against a district judge
 
 [15]
 
 for his grant ór denial of a motion to transfer under Section 1404(a)
 
 for over fifty
 
 years.
 
 [16]
 
 So, in order to keep the
 
 *771
 
 record clean and not “drop the ball” for all the other honorable district courts for the Fifth Circuit, this Court now turns to the applicable transfer factors.
 

 D. Title 28 U.S.C. § 1404(a) Transfer Factors
 

 “In determining whether an action should be transferred under § 1404(a), the court examines factors which fall into two groups: (1) those relating to the convenience of the litigants, and (2) those relating to the public interest in the fair and efficient administration of justice.”
 
 In re Triton Ltd. Sec. Litig.,
 
 70 F.Supp.2d 678, 688 (E.D.Tex.1999) (citing
 
 International Software Sys., Inc. v. Amplicon, Inc.,
 
 77 F.3d 112, 115 (5th Cir.1996);
 
 Walter Fuller Aircraft Sales v. Repub. of Philippines,
 
 965 F.2d 1375, 1389 (5th Cir.1992)). These two groups are the same “private” and “public” interest factors initially carved out by the
 
 Gulf Oil
 
 Court over fifty years ago. All told, they’re about eleven distinct factors this Court should consider in determining whether a movant has carried his burden for transfer.
 

 Private (Convenience) Factors
 

 The Honorable Richard A. Schell, Chief Judge of this District, listed the private, or “convenience” factors:
 

 (1) plaintiffs choice of forum;
 

 (2) the convenience of the parties and material witnesses;
 

 (3) the place of the alleged wrong;
 

 (4) the location of counsel;
 

 (5) the cost of obtaining the attendance of witnesses and the availability of compulsory process;
 

 (6) the accessibility and location of sources of proof; and
 

 (7) the possibility of delay and prejudice if transfer is granted.
 

 Kiamichi,
 
 42 F.Supp.2d at 655 (citing
 
 Lindloff v. Schenectady Intern.,
 
 950 F.Supp. 183, 185-86 (E.D.Tex.1996));
 
 see also In re Triton,
 
 70 F.Supp.2d at 688;
 
 Box v. Ameritrust Texas,
 
 810 F.Supp. 776, 780 (E.D.Tex.1992);
 
 Gundle,
 
 844 F.Supp. at 1165;
 
 Andrade v. Chojnacki,
 
 934 F.Supp. 817, 832 (S.D.Tex.1996).
 

 Public Interest Factors
 

 Judge Schell also listed the public interest factors:
 

 (8) the administrative difficulties caused by court congestion;
 

 (9) the local interest in adjudicating local disputes;
 

 (10) the unfairness of burdening citizens in an unrelated forum with jury duty; and
 

 (11) the avoidance of unnecessary problems in conflict of laws.
 

 Kiamichi,
 
 42 F.Supp.2d at 655 (citing
 
 Walter Fuller Aircraft Sales,
 
 965 F.2d at 1389);
 
 see also In re Triton,
 
 70 F.Supp.2d at 688;
 
 Box v. Ameritrust Texas,
 
 810 F.Supp. 776, 780 (E.D.Tex.1992);
 
 Dandle,
 
 844 F.Supp. at 1165;
 
 Andrade v. Cho-jnacki,
 
 934 F.Supp. 817, 832 (S.D.Tex. 1996). Again, if these factors look familiar, it’s because the United States Supreme Court delineated them over fifty years ago in
 
 Gulf Oil.
 

 Deference to Plaintiffs Choice of Forum Never Disappears
 

 “To begin, the plaintiff is generally entitled to choose the forum.”
 
 Peteet v. Dow Chemical Co.,
 
 868 F.2d 1428, 1436 (5th Cir.1989) (citing
 
 Menendez Rodriguez v. Pan Am. Life Ins. Co.,
 
 311 F.2d 429, 434,
 
 vacated on other grounds,
 
 376 U.S. 779, 84 S.Ct. 1130, 12 L.Ed.2d 82 (1964)). As the Honorable Richard Schell noted, “courts generally concur that there is a strong presumption favoring plaintiffs choice of forum.”
 
 Robertson,
 
 42 F.Supp.2d at 655;
 
 see Texas Instruments, Inc. v. Micron Semiconductor,
 
 815 F.Supp. 994, 996 (E.D.Tex.1993) (the plaintiffs right to choose a forum is “well-established”);
 
 State Street Capital Corp. v. Dente,
 
 855 F.Supp. 192, 197 (S.D.Tex.1994) (“the
 
 *772
 
 plaintiffs choice of forum is entitled to great deference”);
 
 Icon Indus. Controls Corp. v. Cimetrix, Inc.,
 
 921 F.Supp. 375, 384 (W.D.La.1996);
 
 see also Schexnider v. McDermott Int'l, Inc.
 
 817 F.2d 1159, 1162 (5th Cir.),
 
 cert denied,
 
 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987). Despite this overwhelming precedent, Defendant Mazda argues “[w]hen plaintiffs choice of forum appears to be blatant forum shopping with little or no factual justification, the Court should closely scrutinize Plaintiffs choice of forum.”
 
 Defendant Mazda Motor of America, Inc. d/b/a Mazda North American Operations’ Opposed Motion to Transfer for Improper Venue or, In the Alternative, Opposed Motion to Transfer Venue Due to Inconvenient Forum
 
 [4] at p. 10. Well, regardless whether the plaintiffs
 
 motive
 
 in choice of forum suggests “blatant forum shopping” or not (which is really irrelevant for transfer analysis, anyway), this Court closely scrutinizes all forum choices when questioned under timely Section 1404(a) motions.
 
 [17]
 
 Regardless, there’s a strong presumption favoring the plaintiffs choice of forum. Why?
 

 In
 
 In re Triton Limited Securities Litigation
 
 the Honorable David Folsom explained that “the judicial system inherently provides a plaintiff with his choice of forum.” 70 F.Supp.2d 678, 689 (E.D.Tex. 1999). In support of that proposition, Judge Folsom quoted the following Fifth Circuit passage:
 

 The existence of [forum choices] not only permits but indeed invites counsel in an adversary system, seeking to serve his client’s interests, to select the forum that he considers most receptive to his cause. The motive of the suitor in making his choice is ordinarily of no moment: a court may be selected because its docket moves rapidly, its discovery procedures are liberal, its jurors are generous, the rules of law applied are more favorable, or the judge who presides in that forum is thought more likely to rule in the litigant’s favor.
 

 McCuin v. Texas Power & Light Co.,
 
 714 F.2d 1255, 1261-62 (5th Cir.1983). Similarly, the late, Honorable Sam B. Hall, - Jr. of this Court echoed similar justification for the presumption in favor of the plaintiffs choice of forum:
 

 [E]very litigant who files a lawsuit engages in forum shopping when he chooses a place to file suit. The Court is concerned only with whether the choice of forum is a proper one under the law, and not with the motives of the party selecting the forum. The venue statutes are inherently broad, and litigants must often make an election from among several options as to where to file a lawsuit. The litigant’s right to choose a forum is well established, and there are well-recognized tests under 28 U.S.C. § 1404 to determine whether a party has exceeded the bounds of fairness, convenience, and judicial economy in the selection made.
 

 Texas Instruments, Inc. v. Micron Semiconductor, Inc.,
 
 815 F.Supp. 994, 996 (E.D.Tex.1993) (citing
 
 Box v. Ameritrust Texas, N.A.,
 
 810 F.Supp. 776 (E.D.Tex. 1992)). Thus, this Court has previously recognized the presumption of deference afforded to the plaintiffs choice of forum.
 

 Just how strong this “presumption” should be is not entirely clear amongst the courts:
 

 
 *773
 
 [C]ourts have developed a bewildering variety of formulations on how much weight is to be given to plaintiffs choice of forum. Some courts say ... that it is the paramount or primary consideration ... Other cases take a less than enthusiastic view of the weight to be given plaintiffs choice ... [where the plaintiff] chooses a forum with no obvious connections to the case.
 

 Weight, Miller, & Cooper, § 3848 (2d ed.1986). Indeed, some courts
 
 remain
 
 sensitive to attempts at “blatant forum shopping” and rigorously analyze the choice of forum under the requisite private and public interest factors. However, the United States Supreme Court has itself recognized the null role of “forum shopping” when it comes to interpreting Section 1404(a): “No interpretation of § 1404(a), however, will create comparable opportunities for forum shopping by a plaintiff because, even without § 1404(a), a plaintiff already has an option of shopping for a forum with the most favorable law.”
 
 Fev-ens v. John Deere Company,
 
 494 U.S. 516, 527, 110 S.Ct. 1274, 108 L.Ed.2d 443 (1990). As Judge Hall said over six years ago, this Court simply isn’t concerned with the plaintiffs motive for filing suit in this Court — be it “blatant” or not. Rather, “there are well-recognized tests under 28 U.S.C. § 1404 to determine whether a party has exceeded the bounds of fairness, convenience, and judicial economy in the selection made.”
 
 Texas Instruments, Inc. v. Micron Semiconductor, Inc.,
 
 815 F.Supp. at 996 (citing
 
 Box v. Ameritrust, N.A,
 
 810 F.Supp. 776). Let there be no question that in this Court the plaintiffs choice of forum remains highly esteemed— as it was over fifty years ago when the United States Supreme Court decided
 
 Gulf Oil.
 

 Defendant Mazda nonetheless cites
 
 Dupre v. Spanier Marine Corp.
 
 810 F.Supp. 823 (S.D.Tex.1993) for the proposition that “[w]hen plaintiffs choice of forum appears to be blatant forum shopping with little or no factual justification, the Court should closely scrutinize Plaintiffs choice of forum.”
 
 Defendant Mazda Motor of America, Inc. d/b/a Mazda North American Operations’ Opposed Motion to Transfer for Improper Venue or, In the Alternative, Opposed Motion to Transfer Venue Due to Inconvenient Forum
 
 [4] at p. 10. In
 
 Dupre
 
 the Honorable Sam Kent said “the Court gives the plaintiffs choice of forum close scrutiny when the plaintiff does not live in the Southern District of Texas. Further, this Court is loathe to respect those choices that appear to be blatant attempts at forum shopping with little or no factual justification.” 810 F.Supp. at 828. Indeed, other courts have approached files with little or no factual connection to their districts with raised eyebrows whilst considering whether to transfer the case under Section 1404(a).
 
 See Icon Indus. Controls Corp.,
 
 921 F.Supp. at 384;
 
 American Tel. & Tel. Co. v. MCI Communications,
 
 736 F.Supp. 1294 (D.N.J.1990). This Court agrees with the Honorable Sam Kent that there is “blatant forum shopping” when there are
 
 absolutely no factors
 
 supporting venue in the Eastern District of Texas. However, as Judge Hall previously said, this Court really doesn’t care about the plaintiffs
 
 motive
 
 in choosing this forum. Rather, this Court turns its attention to the eleven or so private and public interest factors generated by the
 
 Gulf Oil
 
 Court over fifty years ago wherein motive doesn’t lie.
 

 Nonetheless, Judge Schell held that “deference to plaintiffs choice of forum disappears when the lawsuit has no connection ... to the venue chosen.”
 
 Reed v. Fina Oil and Chemical Co.,
 
 995 F.Supp. 705, 714 (E.D.Tex.1998) (citing
 
 Lindloff,
 
 950 F.Supp. at 185;
 
 Fletcher,
 
 648 F.Supp. at 1404;
 
 Lands v. St. Louis Southwestern R.R. Co.,
 
 648 F.Supp. 322, 324 (E.D.Tex. 1986)). But closer examination of this authority reveals that it is, in fact, a proposition taken out of context from a district court opinion on a class action over forty years ago — more important, this proposition is in direct contravention to the United States Supreme Court’s admonition
 
 *774
 
 that “unless the balance is strongly in favor of the defendant, the plaintiffs choice of forum should
 
 rarely
 
 be disturbed.”
 
 Gulf Oil,
 
 330 U.S. at 508, 67 S.Ct. 839 (considerable emphasis added).
 

 The
 
 Reed
 
 opinion cites
 
 Lindloff v. Schenectady
 
 which in turn cites
 
 Fletcher v. Southern Pacific Transp. Co.,
 
 648 F.Supp. 1400, 1404 (E.D.Tex.1986) and
 
 Morgan v. Illinois Cent. R.R. Co.,
 
 161 F.Supp. 119, 120 (S.D.Tex.1958). But neither
 
 Fletcher
 
 nor
 
 Morgan
 
 say that deference “disappears,” but only that it is given “minimal consideration.”
 
 Id.
 
 But even that is an incorrect statement of the law.
 
 Morgan
 
 gets it from ’a 1955 Seventh Circuit case,
 
 Chicago R.I. & P.R. v. Igoe,
 
 220 F.2d 299 (7th Cir.1955), which explicitly adopts the reasoning of
 
 Josephson v. McGuire,
 
 121 F.Supp. 83, 84 (D.C.Mass. 1954), which held (without citation to authority) that the plaintiffs choice of forum was entitled to only minimal value when (1) the conduct occurred elsewhere
 
 and
 
 (2) “when the plaintiff sues as a representative of a large class of shareholders who presumably are scattered throughout the country and are in number of persons and in number of shares held not shown to be located principally in this State, nor anxious to have litigation heard in this State.”
 
 Id.
 
 So
 
 Igoe,
 
 the genesis of this “minimal” or “disappearing” deference proposition— itself vaporlaw — didn’t even accurately restate the law it claimed it was adopting. Finally, with the exception of
 
 Igóe, no
 
 appellate court has ever sanctioned the contention that deference to the plaintiffs choice of form “disappears” — under
 
 any
 
 circumstances. Such an ungrounded proposition lies in direct contravention to the Supreme Court’s
 
 Gulf Oil
 
 ruling, as transferred to Section 1404(a) by the aforé-mentioned Fifth Circuit authority, holding the aggrieved party should have the privilege of choosing where he wants to seek redress. Recent efforts by district courts to dilute the deference to plaintiffs choice of forum are both unfounded and unnecessary in light of the
 
 Gulf Oil
 
 holding and the appropriate Section 1404(a) analysis using the eleven or so private and public interest factors to combat what defendants call “blatant forum shopping” — whatever that is. The time has come to lay this ungrounded, “disappearing deference” proposition to rest; and this Court does so today. In this Court, deference to the plaintiffs choice of forum
 
 never
 
 “disappears” under
 
 any
 
 circumstances. Rather, it routinely falls under this Court’s analysis with the other ten or so private and public interest factors necessary for a proper Section 1404(a) analysis.
 
 [18]
 
 And, as Judge Schell noted, “it is safe to say that ordinarily plaintiffs choice of forum is given significant weight and will not be disturbed unless the. other factors weigh substantially in favor of transfer.”
 
 Robertson,
 
 42 F.Supp.2d at 656.
 

 Convenience of Parties and Material Witnesses
 

 Typically, the most important of the above factors is whether substantial inconvenience will be visited upon key fact witnesses should the court deny transfer.
 
 Dupre v. Spanier Marine Corp.,
 
 810 F.Supp. 823, 825 (S.D.Tex.1993);
 
 Fletcher v. Southern Pacific Transp. Co.,
 
 648 F.Supp. 1400, 1401-02 (E.D.Tex.1986);
 
 State Street Capital Corp.,
 
 855 F.Supp. at 197;
 
 Electronic Transaction Network v. Katz,
 
 734 F.Supp. 492, 501 (N.D.Ga.1989);
 
 Saminsky v. Occidental Petroleum Corp.,
 
 373 F.Supp. 257, 259 (S.D.N.Y.1974); 15
 
 *775
 
 Wright, Miller, & Cooper, § 3851 at 415 (2d ed.1986). “[Vlcnue is considered convenient in the district or division where the majority of witnesses are located.”
 
 [19]
 

 Robertson,
 
 42 F.Supp.2d at 657;
 
 see Dupre,
 
 810 F.Supp. at 825. “Another consideration in analyzing the availability and convenience of witnesses is where the only result is to shift the balance of inconveniences from the moving party to the non-moving party.”
 
 Dupre,
 
 810 F.Supp. at 826;
 
 see Quicksilver, Inc. v. Academy Corp.,
 
 1998 WL 874929, at *3, 1998 U.S.Dist. LEXIS 7632, at 5-6;
 
 Young v. Armstrong World Indus., Inc.,
 
 601 F.Supp. 399, 401-02 (N.D.Tex.1984);
 
 Gundle,
 
 844 F.Supp. 1163, 1166-67 (S.D.Tex. 1994). This Court will not entertain tactical battles for convenience shifting; nor will it transfer cases for the mere convenience of a few witnesses.
 
 [20]
 
 15 Wright, Miller,
 
 &
 
 Cooper, § 3851 at 424-25 (2d ed.1986) (noting that courts have uniformly “refused to let applications for transfer become a ‘battle of numbers.’ ”).
 

 “Moreover, it is the convenience of non-party witnesses, rather than that of party witnesses, that is the more important factor and is accorded greater weight in a transfer of venue analysis.”
 
 State Street Capital Corp.,
 
 855 F.Supp. at 198 (citing
 
 Aquatic Amusement Assoc., Ltd. v. Walt Disney World Co.,
 
 734 F.Supp. 54, 57 (N.D.N.Y.1990);
 
 DEV Indus., Inc. v. NPC, Inc.,
 
 763 F.Supp. 313, 315 (N.D.Ill.1991);
 
 Designs by Glory, Ltd. v. Manhattan Creative Jewelers, Inc.,
 
 657 F.Supp. 1257, 1259 (S.D.N.Y.1987)). So, while the location of party witnesses may factor into transfer analysis, it’s the location of key, non-party witnesses that dominates. Regardless whether transfer is sought for key party or non-party witnesses, the moving litigant must make more than a general allegation that the key witnesses are inconveniently located.
 
 See Robertson,
 
 42 F.Supp.2d at 657;
 
 Dupre,
 
 810 F.Supp. at 825, 15; Wright, Miller, & Cooper, § 3851 at 425. The moving party must “specifically identify key witnesses and outline the substance of their testimony.”
 
 [21]
 

 Hupp v. Siroflex of America, Inc.,
 
 848 F.Supp. 744, 749 (S.D.Tex.1994);
 
 Dupre,
 
 810 F.Supp. at 825;
 
 Continental Airlines,
 
 805 F.Supp. at 1396.
 

 At first, Defendant Mazda completely failed to specifically identify key witnesses and outline the substance of their testimony. Here’s all that Defendant Mazda initially said about the alleged inconvenience of non-party witnesses: “As established by Plaintiffs’ Original Complaint, the automobile accident which gave rise to this suit occurred in Dallas, Texas. As a result, a transfer to the Dallas Division of the Northern District of Texas will enhance the availability and convenience of witnesses to the accident, including Dallas police officers, medical personnel who treated the parties to the automobile accident, and witnesses to the incident itself.”
 
 Defendant Mazda Motor of Arne,rim, Inc. d/b/a Mazda Noiih A-merimn Operations’ Opposed Motion to Transfer for Improper Venue Or, In the Alternative, Opposed Motion to Transfer Venue Due to Inconvenient Forum
 
 T4] at 7. And here’s all that Defendant Mazda initially said about the inconvenience of party witnesses: “MNAO
 
 *776
 
 [Defendant Mazda] maintains its principal place of business and is incorporated in the state of California, and MNAO is represented by the undersigned whose sole office is located in San Antonio within the Western District of Texas.”
 
 Id.
 
 Both of these vague references to unspecified “key” party and non-party witnesses are completely insufficient for this Court to conduct
 
 any
 
 meaningful transfer analysis. However, after the Plaintiffs noted this deficiency in their response, Defendant Mazda clarified some of these vague, inconvenience allegations by specifying
 
 who
 
 four of the key witnesses are,
 
 what
 
 their testimony is likely to be, and
 
 where
 
 they currently reside. Specifically, Defendant Mazda listed the other driver involved in the accident, Gregory J. Graham; the investigating officer, Larry W. Loggins; the treating physician, Dr. Hoyle, and the medical examiner, Emma Proffet — presumably Dallas residents.
 
 Id.
 
 Nonetheless, vague allegations about “the officer in charge of the investigation” and the “paramedics” persist despite ample opportunity for briefing.
 
 Id.
 
 While Defendant Mazda did successfully clarify some of its vague inconvenience allegations by listing (only) four non-party witnesses, the fact remains that Marshall, Texas is only one hundred and fifty (150) miles from Dallas, Texas. Given the advances in transportation and communication, the distance between Marshall and Dallas is negligible. “This case is not being consigned to the wastelands of Siberia or some remote, distant area of the Continental United States.”
 
 Jarvis Christian College v. Exxon,
 
 845 F.2d 523, 528 (5th Cir.1988). No, just Marshall, Texas.
 
 [22]
 

 Additionally, the location of the parties should weigh in this Court’s transfer analysis.
 
 Robertson,
 
 42 F.Supp.2d at 657. The Plaintiffs Original Complaint describes the Plaintiffs as “citizens of the State of Texas.”
 
 Plaintiffs Original Complaint
 
 [1] at 2. Thus, it is not entirely clear whether Plaintiffs reside in Marshall, Dallas, or somewhere else. It is clear, however, that Defendant Mazda maintains its principal place of business and is incorporated in the State of California. California to Marshall versus California to Dallas— not much difference.
 
 [23]
 

 The Place of the Alleged Wrong
 

 Obviously, this Court should consider the place of the alleged wrong in its transfer analysis. However, contrary to what Defendant Mazda suggests, this Court should not merely note the overt accident occurred outside the Eastern District of Texas and unilaterally assume the cause of action has “no connection” to the Eastern District of Texas and that the plaintiff is guilty of “blatant forum shopping” (the latter of which is irrelevant for this Court’s transfer analysis, anyway). Nonetheless, as Defendant Mazda notes, Dr. Mohamed’s car accident occurred on Greenville Avenue in Dallas, Texas — within the Dallas Division for the Northern District of Texas. However, the location of the
 
 accident
 
 revealing the allegedly defective product is a red herring for transfer analysis in cases where the plaintiff is suing for the allegedly defective
 
 design and manufacture
 
 of the product. The complaint is about the
 
 product
 
 —not just the accident. Had the Plaintiffs sued the driver of the other car for negligent driving, the transfer analysis would be different. Here, Plaintiffs bring
 
 *777
 
 claims against Defendant Mazda for the negligent
 
 design, manufacture, distribution, and sale
 
 of the car- — specifically, its safety restraints.
 
 Plaintiffs’ Original Complaint
 
 [1] at p. 4. There is no evidence that Defendant Mazda designed and manufactured Dr. Mohamed’s Mazda Protege in the Northern District of Texas; conversely, there is no evidence that Defendant Mazda designed and manufactured Dr. Mohamed’s Mazda Protege in the Eastern District of Texas. Thus, the place of the alleged wrong — whether it be the accident in the Northern District of Texas or the manufacture and design of the allegedly defective product in an unknown district— neither supports nor weighs against transfer to the Northern District of Texas in this product liability case.
 

 The Location of Counsel
 

 “The location of counsel, while a factor in deciding whether to transfer, is given little weight as compared to other convenience factors.”
 
 Robertson,
 
 42 F.Supp.2d at 658 (citing
 
 Reed v. Fina Oil and Chemical Co.,
 
 995 F.Supp. 705, 715 (E.D.Tex. 1998)). Nevertheless, this Court may consider the location of counsel in deciding whether to transfer a case for convenience and justice under Section 1404(a). The Plaintiffs list Carl R. Roth of the Law Offices of Carl R. Roth in Marshall, Texas as the lead attorney, with Michael Smith of the same firm as co-counsel. Additionally, the Plaintiffs list Robert M.N. Palmer of the Law Offices of M.N. Palmer in Springfield, Missouri and William C. Carmody of Dallas, Texas as additional counsel. Defendant Mazda lists Lewin Plunket of Plunkett & Gibson in San Antonio, Texas as its lead attorney. So, the Plaintiffs’ lead attorney is located in Marshall, Texas; this factor weighs against transfer to the Northern District of Texas- — but not much. The Plaintiffs’ additional counsel are located in Springfield, Missouri and Dallas, Texas. Defendant Mazda’s lead attorney is located in San Antonio, Texas; this factor neither weighs for or against transfer to the Northern District of Texas.
 
 See supra,
 
 n. 24.
 

 The Cost of Obtaining the Attendance of Witnesses and the Availability of Compulsory Process
 

 Admittedly, the Eastern District of Texas is a more distant forum for the four, non-party witnesses specifically identified by Defendant Mazda.
 
 [24]
 
 Thus, these four, key non-party witnesses will likely incur
 
 some
 
 additional travel costs if the trial occurs in Marshall rather than Dallas. Nonetheless, this Court notes, once again, that Marshall, Texas is only one hundred and fifty (150) miles from Dallas, Texas. The expenses for these four witnesses will
 
 not
 
 necessarily include overnight lodging.
 
 [25]
 
 Additionally, this Court reiterates that it will not transfer cases for the mere convenience of a few witnesses. 15 Weight, Miller,
 
 &
 
 Cooper, § 3851 at 424-25 (2d ed.1986) (noting that courts have uniformly “refused to let applications for transfer become a ‘battle of numbers.’ ”). While this Court remains mindful of the convenience of non-party, key witnesses, it will not disrupt a plaintiffs choice of forum, strip a case from its roots, and transfer a federal lawsuit for the sole reason of preventing a two-and-a-half-hour drive by a few witnesses.
 
 [26]
 
 The costs for these four Dallas witnesses — assuming they are “key” witnesses — to attend trial a few hours away in Marshall is minimal.
 

 
 *778
 
 Additionally, litigante in this Court often make the argument that witnesses outside the Eastern District of Texas and over one hundred (100) miles from the Marshall courthouse are beyond its subpoena range. Well that’s just wrong. Federal Rule of Civil Procedure 45 (entitled “Subpoena”) underwent a complete revision in 1991. In commenting on this revision, the Advisory Committee noted that one of the purposes of this revision was to “[ejnable the court to compel a witness found within the state in which the court site to attend trial.”
 
 See Notes of Advisory Committee on Civil Rules, 1991 Amendments,
 
 134 F.R.D. 525, at 576, 582, and 672;
 
 O’Connor’s Federal Rules
 
 *
 
 Civil Trials 2000,
 
 p. 145, 985 (par. 1), 986 (par. 23) (“Do not make the mistake of arguing that a witness who is outside the district and not within 100 miles of the courthouse cannot be compelled to attend trial when that witness is present in the state in which the court sits.”);
 
 Yun Ja Chung v. Chrysler,
 
 903 F.Supp. 160, 165 (D.D.C.1995). Here, the four witnesses specifically identified by Defendant Mazda reside in the State of Texas. Since the specified witnesses reside within the State of Texas, they are within this Court’s subpoena range. Thus, this factor does not weigh in favor of transfer.
 

 The Accessibility and Location of Sources of Proof
 

 Typically, the accessibility and location of sources of proof should weigh only slightly in this Court’s transfer analysis, particularly since these factors have been given decreasing emphasis due to advances in copying technology and information storage.
 
 See Arrow Elecs., Inc. v. Ducommun, Inc.,
 
 724 F.Supp. 264, 266 (S.D.N.Y.1989);
 
 Houk v. Kimberly-Clark Corp.,
 
 613 F.Supp. 923, 932 (W.D.Mo. 1985). Indeed, this factor was probably of more significance in the pre-copier, preelectric typewriter, pre-PC, pre-e-mail, pre-videotape days of 1947 when the Supreme Court decided
 
 Gulf Oil.
 
 As the Honorable Sam Kent so eloquently noted: “Notwithstanding, with advances in communication, transportation, and the preservation of testimony, costs and encumbrances that were once oppressive are now usually surmountable.”
 
 Dupre,
 
 810 F.Supp. at 827. Additionally, Local Rule CV-26 for the Eastern District of Texas requires parties to provide “a copy of all documents, data compilations, and tangible things in the possession, custody, or control of the party that are likely to bear significantly on any claim or defense.” Local Rule CV-26(b)(l)(B). Under this rule, parties are to
 
 immediately
 
 disclose any documents that “bear significantly on” any claim or request
 
 regardless of their storage location.
 
 Here, Defendant Mazda notes the police report, medical records, and autopsy records lie within the Northern District of Texas. This Court notes that its own Local Rule CV-26 requires Defendant Mazda to have already provided initial disclosures — including the police report, medical records, and autopsy records — to the Plaintiffs
 
 if they are in its possession, custody, or control.
 

 [27]
 

 Simply put, although the accessibility and location of sources of proof remain considerations in this Court’s transfer analysis, they are of only slight significance due to the increasing ease of communication and transportation and this Court’s mandatory disclosure obligations under Local Rule CV-26.
 

 Finally, while the possibility of a jury view has been considered a factor in transfers in the past,
 
 see Gulf Oil,
 
 330 U.S. at 508, 67 S.Ct. 839, jury views are now frowned upon and should rarely be used.
 
 See
 
 15 Wright, Miller, & Cooper § 3854.
 
 *779
 
 In any event, Defendant Mazda bears the burden of demonstrating the need for a jury view, and this Mazda has not done. Thus, this factor does not weigh in favor of transfer.
 

 The Possibility of Delay and Prejudice If Transfer Is Granted
 

 Certainly, this Court should consider whether delay and prejudice would occasion any party should transfer be granted. First, the 1998 management statistics for both the Eastern and Northern Districts of Texas show the median time to trial in the Eastern District is fourteen (14) months while the median time to trial in the Northern District is twenty (20) months.
 
 See U.S. District Court
 
 — Judi
 
 cial Caseload Profile for the Eastern District of Texas and for the Northern District of Texas, attached as Exhibit C to Plaintiff’s Response to Defendant’s Motion to Transfer Venue (“Caseload Pro-j'iles”)
 
 L7]. Thus, the parties would probably get to trial almost half a year earlier in the Eastern District as opposed to the Northern District. Second, the Eastern District of Texas has implemented a comprehensive set of local rules originally enacted as part of this Court’s Civil Justice Expense and Delay Reduction Plan in 1990. As already noted, the Local Rules for the Eastern District of Texas impose mandatory disclosure obligations upon parties of information that “bears significantly” upon any claims or defenses in the case — regardless whether there are pending motions to dismiss, remand, or transfer venue.
 
 See
 
 Local Rule CV-26. In contrast, disclosure is
 
 not
 
 available in the Northern District unless the individual judge orders it.
 
 See
 
 Northern District Local Rule 26.1. Even then, the less-revealing disclosure provisions of Federal Rule of Civil Procedure 26(b) apply: “a description by category and location” (and not a copy) of “all documents ... that are relevant to disputed facts alleged with particularity in the pleadings.” This Court’s rapid docket, combined with its mandatory disclosure obligations, do not support transfer of this case to the Northern District of Texas.
 

 The Administrative Difficulties Caused By Court Congestion
 

 Of course, this Court should consider court congestion in its transfer analysis. As of 1998 there were a total of 744 cases pending in the Eastern District of Texas, as opposed to a total of 537 cases pending in the Northern District of Texas.
 
 See Caseload Profiles.
 
 Thus, this factor weighs in favor of transfer.
 

 The Local Interest In Adjudicating Local Disputes
 

 Of course, this Court should consider the local interest in adjudicating local disputes. As already noted, it is not entirely clear whether Plaintiffs reside in Marshall, Dallas, or somewhere else. It is clear, however, that Defendant Mazda maintains its principal place of business and is incorporated in the State of California. Thus, this factor does not weigh either way in this Court’s transfer analysis.
 

 The Unfairness of Burdening Citizens In An Unrelated Forum With Jury Duty
 

 This Court should not burden Eastern District of Texas residents with jury duty to decide cases that have absolutely nothing to do with the Eastern District of Texas. However, the Plaintiffs’ claims do touch upon the Marshall Division for the Eastern District of Texas. Again, although the accident occurred in Dallas in the Northern District of Texas, the claims are
 
 product liability claims against the manufacturer, Defendant Mazda,
 
 —not claims for
 
 negligent operation of the vehicle against the driver, Gregory H. Graham.
 
 There are currently four Mazda dealerships located within the Eastern District of Texas.
 
 See Affidavit of Jeanne Rene Ford, Attached as Exhibit A to Plaintiffs’ Response to Defendant’s Motion to Transfer Venue
 
 [7], Since the Plaintiffs’ product liability claims are directed at the
 
 vehicle
 
 and not solely at the
 
 accident,
 
 those claims touch upon the Eastern District of Texas. Simply put,
 
 *780
 
 residents of the Eastern District of Texas would be interested to know whether there are currently defective products offered for sale in the Eastern District of Texas. Indeed, residents of the Eastern District of Texas would also be interested to know whether they were exposed to these allegedly defective products in their everyday lives. Thus, this factor does not support transfer.
 

 The Avoidance of Unnecessary Problems In Conflict of Laws
 

 Since the Plaintiffs bring claims for negligence and product liability and transfer is sought between divisions of the same state, Texas, this factor is inapplicable.
 

 For all of these reasons, this Court DENIES Defendant Mazda’s
 
 Opposed Motion to Transfer for Improper Venue or, In the Alternative, Opposed Motion to Transfer Venue Due to Inconvenient Fomm
 
 [4] as to the motion to transfer under Title 28 U.S.C. § 1404(a).
 

 4. Conclusion
 

 Accepting as true the Plaintiffs’ representation that Defendant Mazda has yet to make its initial disclosures regarding its defense of improper venue under Local Rule CV-26 for the Eastern District of Texas, this Court is hesitant to rule on Defendant Mazda’s motion to dismiss for improper venue (for lack of personal jurisdiction) absent
 
 any
 
 meaningful discovery. Defendants may not move for dismissal under the defense of improper venue and simultaneously refuse to disclose that very same information to the Plaintiffs. No reading of the Local Rules for the Eastern District of Texas would permit such tactical recalcitrance. Consequently, this Court will not indulge Mazda’s motion to dismiss for lack of personal jurisdiction at this inopportune time. Rather, this Court turns its attention to the motion to transfer under Section 1404(a).
 

 In 1948 Congress enacted Title 28 U.S.C. § 1404(a) — the federal judicial housekeeping measure — -that grew out of the states’ common-law doctrine of forum non conveniens. Over fifty years ago in
 
 Gulf Oil Corporation v. Gilbert,
 
 the United States Supreme Court delineated the private and public interest factors necessary for proper analysis of forum non conve-niens motions. Later, the courts adopted these same factors for analyzing motions to transfer under Section 1404(a). The Fifth Circuit — as well other circuits and commentators — note the fact-intensive nature of these motions to transfer under Section 1404(a) and, consequently, the hesitance of appellant courts to review these orders via interlocutory appeal or mandamus. Specifically, this Court notes that the Fifth Circuit has not issued a writ of mandamus against a district judge for the grant or denial of a Section 1404(a) motion
 
 for over fifty years.
 
 More important, this Court notes that the eleven or so factors used for Section 1404(a) analyses were delineated in 1947 when the Supreme Court decided
 
 Gulf Oil
 
 —in the pre-copier, pre-electric typewriter, pre-PC, pre-e-mail, pre-videotape days of 1947. Even in 1947, before today’s considerable advances in communication and transportation, the United States Supreme Court held that “unless the balance is strongly in favor of the defendant, the plaintiffs choice of forum should rarely be disturbed.”
 
 Gulf Oil,
 
 330 U.S. at 508, 67 S.Ct. 839. While the deference to plaintiffs choice of forum may factor differently in some cases, it
 
 never
 
 “disappears.” Indeed, as many of the other eleven transfer factors wane under the brilliance of today’s advances in transportation and communication, this one maxim delivered by the United States Supreme Court over fifty years ago shines unblemished: “[Ujnless the balance is strongly in favor of the defendant, the plaintiffs choice of forum should rarely be disturbed.”
 
 Gulf Oil,
 
 330 U.S. at 508, 67 S.Ct. 839.
 

 In this particular case, this Court has explored the eleven or so private and public interest factors specific to this case; and, for the reasons specifically delineated
 
 *781
 
 in this order, it finds that Defendant Mazda has failed to demonstrate that the balance of convenience and justice
 
 substantially
 
 weighs in favor of transfer to the Northern District of Texas, Dallas Division.
 

 Accordingly, this Court DENIES SUBJECT TO RE-URGING AFTER FURTHER DISCOVERY Defendant Mazda’s
 
 Opposed Motion to Transfer for Improper Venue or, In the Alternative, Opposed Motion to Transfer Venue Due to Inconvenient Forum
 
 [4] as to the motion to transfer for improper venue; and it DENIES Defendant Mazda’s
 
 Opposed Motion to Transfer for Improper Venue or, In the Alternative, Opposed Motion to Transfer Venue Due to Inconvenient Forum
 
 [4] as to the motion to transfer under Title 28 U.S.C. § 1404(a).
 

 Welcome to the Eastern District of Texas, Marshall Division.
 

 It is SO ORDERED.
 

 [1]
 

 . Although the litigants in this case did not confuse
 
 improper
 
 venue with
 
 transfer for convenience,
 
 other litigants in this Court have blurred the distinction.
 

 [2]
 

 . The other defendant in this case, Mazda Motor Corporation, is an alien. Title 28 U.S.C. § 1391(d) says that "[a]n alien may be sued in any district.” Title 28 U.S.C. § 1391(d). Mazda Motor Corporation has not yet appeared in this case.
 

 [3]
 

 . The Due Process Clause of the Fourteenth Amendment says, in part: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law.” U.S. Const, amend. XIV, § 1.
 

 [4]
 

 . This Court encourages all litigants to honor their initial disclosure obligations under Rule CV-26 for the Eastern District of Texas. Recalcitrance to this Court’s Local Rules — in-eluding the
 
 mandatory
 
 initial disclosure obligations — will not be tolerated.
 

 [5]
 

 . How would Defendant Mazda respond were the Plaintiffs to file this lawsuit and refuse to
 
 *764
 
 provide information that "bears significantly on ... [its] claim[s],” such as a copy of all the relevant medical records? See, recalcitrance can he a double-edge sword. Fortunately, it cuts no mustard in this Court when it comes to mandatory disclosure obligations under Local Rule CV-26.
 

 [6]
 

 . Litigants in this Court have, from time to time, blurred this distinction too.
 

 [7]
 

 . The Fifth Circuit on the standard for dismissal under the surviving doctrine of forum non conveniens:
 

 A court facing a motion to dismiss for forum non conveniens must first assess whether an alternate forum is both available and adequate. As we have stated: “A foreign forum is available when the entire case and all parties can come within the jurisdiction of that forum. A foreign forum is adequate when the parties will not be deprived of all remedies or treated unfairly, even though they may not. enjoy the same benefits as they might receive in an American court.”
 

 Alpine View Co. Ltd. v. Atlas Copco AB,
 
 205 F.3d 208, 221-22 (5th Cir.2000) (quoting
 
 In re Air Crash Disaster Near New Orleans, La.,
 
 821 F.2d 1147, 1165 (5th Cir.1987)).
 

 [8]
 

 . Incidentally, under controlling Fifth Circuit precedent, this Court need not issue any type of opinion at all when it comes to Title 28 U.S.C. § 1404(a) transfer motions. Although not the "better practice,” it can grant or deny these transfer motions with no explanation at all.
 
 Peteet v. Dow Chemical Co.,
 
 868 F.2d 1428, 1436 (5th Cir.),
 
 cert. denied,
 
 493 U.S. 935, 110 S.Ct. 328, 107 L.Ed.2d 318 (1989). Nonetheless, this Court fully understands that, in order for the Fifth Circuit to perform its appellate function, the district court should assign "reasons for its ruling” and make "factual findingfs] or legal references.”
 
 Louisiana Ice Cream Distributors, Inc. v. Carvel Corporation,
 
 821 F.2d 1031, 1034 (1987). But many of these "motions” to transfer are simply one-line "motions” with no briefing. When the moving litigant fails to brief this Court on the private and public factors necessary to make a proper Section 1404(a) analysis, there simply are no findings it can make other than those it can
 
 sua sponte
 
 extrapolate from the record (if any).
 
 See infra,
 
 n. 18.
 

 [9]
 

 . Yet again, litigants in this Court, from time to time, erroneously argue there is some divisional filing requirement. Well, not anymore.
 

 [10]
 

 . There is a rather nice symmetry to all of this: 1) the Section 1404(a) analysis remains the same whether an
 
 inter
 
 or
 
 intra
 
 district transfer is sought; 2) the Section 1404(a) analysis remains the same whether the plaintiff or the defendant moves for transfer; and 3) and the transferor law applies regardless who makes the Section 1404(a) motion. Indeed, the United States Supreme Court recognized the need to maintain this symmetry: "Affording transfers initiated by plaintiffs different treatment from defendants may seem quite workable
 
 in this case,
 
 but the simplicity is an illusion ... Other cases, however, would produce undesirable complications.”
 
 Ferens,
 
 494 U.S. at 530, 110 S.Ct. 1274 (emphasis added).
 

 [11]
 

 . Although
 
 Schexnider
 
 was a forum non con-veniens case, it has been cited by numerous district courts in the Fifth Circuit in analyzing motions to transfer venue under Title 28 U.S.C. § 1404.
 
 See Sanders v. Southern States,
 
 998 F.Supp. 729, 737 (E.D.Tex.1998).
 

 [12]
 

 . Professors Wright, Miller, and Cooper previously said: "[T]he Fifth Circuit
 
 never
 
 has found (in a decision on a motion to transfer under section 1404(a)) an abuse of discretion sufficiently clear to justify mandamus.” 15 Wright, Miller, & Cooper, § 3855, at 314 (1976) (emphasis added). This Court suspects
 
 Atlantic Coast Line R.R. v. Davis,
 
 185 F.2d 766 (5th Cir.1950) may prevent the scholars from holding the Fifth Circuit has
 
 never
 
 issued a writ of mandamus to a district judge disrupting his grant or denial of motion to transfer under Section 1404(a). However, in that case (brought merely
 
 two
 
 years after Congress enacted Section 1404(a)), the district judge renounced his jurisdiction after two mistrials and re-transferred the case to the transferor court.
 
 Id.
 
 In issuing the writ to the district judge, the Fifth Circuit held "there was instead a misconception of his power under section 1404(a),
 
 supra,
 
 and of the permissible weight to be given the fact of mistrials.”
 
 Id.
 
 at 770. The writ issued because the district judge, grappling with the merely two-year-old Section 1404(a), simply assigned too much weight to be given to mistrials in his transfer analysis. Simply put, the district judge misapplied the necessary relevant factors to a brand new statute with little precedent. Today — almost fifty (50) years after this single case of mandamus of a Section 1404(a) ruling — the public and privage interest factors necessary for a proper analysis are well rooted.
 

 [13]
 

 . As this Court's patent infringement litigants are undoubtedly aware, the Federal Circuit views a district court’s ruling on a motion to transfer under Section 1404(a) as a “procedural matter.”
 
 Winner Intl. Royalty Corp. v. Wang,
 
 202 F.3d 1340, 1352 (Fed.Cir.2000). Consequently, the Federal Circuit's review of a motion to transfer under Section 1404(a) "is governed by the law of the regional circuit in which it sits.”
 
 Id.
 
 (citing
 
 Stewart Org., Inc. v. Ricoh Corp.,
 
 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (classifying Section 1404(a) as a procedural rule);
 
 Regents of the Univ. of Cal.
 
 v.
 
 Eli Lilly and Co.,
 
 119 F.3d 1559, 1565, 43 USPQ2d 1398, 1403 (Fed.Cir.1997) (applying regional circuit law)).
 

 [14]
 

 . It is worth noting that this Fifth Circuit opinion went up on
 
 appeal
 
 on
 
 both
 
 the court’s denial of the dismissal for personal jurisdiction and the alternatively requested relief of transfer.
 
 Koehring,
 
 324 F.2d at 295. Additionally, although the Court transferred the case under Section 1404(a), it discussed at length Section 1406(a) — the provision which allows district courts to transfer cases even when personal jurisdiction doesn't lie.
 
 Id.
 
 at 297-98.
 

 [15]
 

 . Knock on wood.
 

 [16]
 

 . Again,
 
 Koehring,
 
 a 1963 case reversing a district judge's denial of a motion to transfer under Section 1404(a), was apparently brought by appeal and "remanded with instructions that it be transferred to the Northern District of Oklahoma.” 324 F.2d at 298.
 
 *771
 
 There was no mandamus requested, let alone denied.
 

 [17]
 

 . As previously noted, although not the "better practice,” this Court can grant or deny these transfer motions with no explanation at all.
 
 Peteet v. Dow Chemical Co.,
 
 868 F.2d 1428, 1436 (5th Cir.),
 
 cert. denied,
 
 493 U.S. 935, 110 S.Ct. 328, 107 L.Ed.2d 318 (1989). This Court endeavors to issue memorandum and opinion orders on
 
 all
 
 transfer motions. However, for some reason this particular Court — and specifically the Marshall Division — is awash in motions to transfer. Some of these motions to transfer are nothing more than one-line "motions” tucked away in answers. Although this Court will endeavor to draft opinions sufficient to enable appellate review, respectfully, this Court will not work late into the evening drafting lengthy treatises on Title 28 U.S.C. § 1404(a) in response to one-line motions with little or no briefing. In this particular case, the parties submitted exceptional briefing. Hence this memorandum and opinion order.
 

 [18]
 

 . As Judge Kozinski aptly observed in a colorful dissent, it would be a "mutated” version of section 1404(a) where "a plaintiff's right to pick its venue has devolved to the significance of a tailbone or an appendix.”
 
 In re American Continental Corp./Lincoln Sav. & Loan Sec. Litig.,
 
 102 F.3d 1524, 1546 (9th Cir.1996) (Kozinski, J., dissenting),
 
 reversed by Lexecon v. Milberg, Weiss, et al.,
 
 523 U.S. 26, 118 S.Ct. 956, 140 L.Ed.2d 62 (1998). This Court wholeheartedly agrees with Judge Kozinski. It further notes that the "plaintiff's choice of forum” is typically the
 
 first
 
 factor listed for Section 1404(a) analyses in most court's opinions. It is axiomatic that the
 
 very first
 
 factor historically considered by courts in Section 1404(a) analyses is not the tailbone. If anything, it’s the head.
 

 [19]
 

 . Nonetheless, "[t]he convenience of one key witness may outweigh the convenience of numerous less important witnesses.”
 
 Dupre,
 
 810 F.Supp. at 825 (citing
 
 Young v. Armstrong World Indus., Inc.,
 
 601 F.Supp. 399, 401-02 (N.D.Tex.1984)). Hence, the need for litigants seeking transfer to
 
 specifically
 
 identify key witnesses and outline the substance of their testimony.
 
 See supra,
 
 n. 18. Just as an appellate court cannot ascertain the exercise of this Court’s discretion without a written opinion, so this Court cannot exercise that discretion to ascertain the balance of the parties’ convenience factors without
 
 specific
 
 references to witnesses and their testimony. Call it the trickle down effect.
 

 [20]
 

 . While the location of key witnesses is typically the most important factor this Court should consider, it is only
 
 one
 
 of the
 
 eleven
 
 or so private and public interest factors that play into the Section 1404(a) analysis.
 

 [21]
 

 . Why?
 
 See supra,
 
 n. 20.
 

 [22]
 

 . Considering some of the melo-dramatic Section 1404(a) motions to transfer this Court receives, you’d think Marshall sits high atop the Himalayas. Well, leave your skis and St. Bernard at home because it doesn't. (But bring your ice-skates because the town erects an ice-skating rink in front of the courthouse during winter.)
 

 [23]
 

 . Litigants typically complain that Marshall, Texas does not have an accessible airport like Dallas, Texas. Well, this Court takes judicial notice that Shreveport, Louisiana operates a fully functional airport (with airplanes and everything) only thirty (30) miles from Marshall, Texas. By comparison, this Court takes judicial notice that the Dallas/Fort-Worth International Airport is
 
 at least
 
 twenty (20) miles from downtown Dallas, Texas. So much for the airport argument.
 

 [24]
 

 . For purposes of this transfer analysis, this Court will assume that Defendant Mazda's four, non-party witnesses are "key” witnesses — even though it remains unclear.
 

 [25]
 

 . Indeed, trial typically commences at 9:00 a.m. giving these key, non-party witnesses ample time to make the two-and-a-half-hour drive to and from Marshall. Moreover, during trial this Court will endeavor to ensure there is no waste of the witnesses’ — and this Court's — time.
 

 [26]
 

 . Again, should the inconvenience of
 
 several
 
 non-party, key witnesses be apparent, nor will this Court hesitate to transfer a case provided the other factors support transfer, too.
 

 [27]
 

 . Once again, litigants seeking transfer often erroneously use their pending motion as an excuse for failing to comply with this Court’s initial disclosure obligations under Local Rule CV-26. Well, Local Rule CV-26(b)(4), entitled "No Excuses,” says, in part: “Absent court order to the contrary, a party is not excused from disclosure because there are pending motions to dismiss, to remand
 
 or to change venue."
 
 Local Rule CV-26(b)(4) (emphasis added). So much for that excuse.